IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMANDA N. AMANTI,                                    6:11-cv-06378-MA

                    Plaintiff,                  OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

KATHRYN TASSINARI
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401

        Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

WILLY M. LE
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

        Attorneys for Defendant

MARSH, Judge

Plaintiff, Amanda N. Amanti brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Act. 42 U.S.C. § 1381-1383f. This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, I REVERSE the final decision of the Commissioner and REMAND for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

On November 19, 2008, plaintiff protectively filed an application for SSI alleging disability due to obsessive compulsive disorder, agoraphobia, post traumatic stress disorder, diabetes, depression, anxiety, acid reflux, and asthma. Tr. 11, 127. A hearing before an Administrative Law Judge (ALJ) was held on February 17, 2011, in Eugene, Oregon, at which plaintiff was represented by counsel and testified. Additionally, Vocational Expert (VE) Jeffrey F. Tittlefitz was present throughout the hearing and testified.

On May 16, 2011, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. After the Appeals Council denied review, plaintiff timely filed a petition for review in this court.

## FACTUAL BACKGROUND

Born on September 14, 1981, plaintiff was 27 years old on the alleged onset date of disability, and 29 years old on the date of the hearing. Plaintiff has a high school diploma and completed one year of vocational training at a beauty college. Tr. 31-32. Plaintiff has no past relevant work. Tr. 51-52.

Plaintiff alleges her various disabilities became disabling on November 19, 2008. Tr. 111. Plaintiff has seen several medical professionals for treatment, including her therapist, Irene Stamis Kulus; Richard Browning, a psychiatric and mental health nurse practitioner; and Aaron Pardini, M.D., with regard to her diabetes. Plaintiff was examined by Alison Prescott, Ph.D., who prepared an opinion regarding plaintiff's work capacity. Finally, plaintiff's records were reviewed by Robert Henry, Ph.D., who prepared a Mental Residual Functional Capacity (RFC) Assessment.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can

perform.  See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ found that the claimant has not engaged in substantial gainful activity since the date of the alleged onset of disability.  See 20 C.F.R. § 416.971; Tr. 13.

At Step Two, the ALJ found that plaintiff's attention deficit hyperactivity disorder (ADHD), depressive disorder, posttraumatic stress disorder (PTSD), panic disorder with agoraphobia, and personality disorder all constituted severe impairments.  See 20. C.F.R. § 416.920(c); Tr. 13.  Additionally, the ALJ found that plaintiff's diabetes and left foot pain and swelling were non-severe impairments that did not cause significant vocational limitations.  Tr. 14.

At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meet or medically equaled a listed impairment.  20 C.F.R. §§ 416.920(d), 416.925, 416.926; Tr. 15-17.

The ALJ found that plaintiff had the RFC to perform a full range of work at all exertional levels, with the non-exertional limitations that plaintiff can understand and remember simple one-to three-step instructions, but may occasionally require repeated instructions.  Tr. 17-20.  The ALJ found that plaintiff can carry out simple routine tasks, and could interact with familiar co-

workers, but should not have public contact in the work setting. Tr. 17.

At Step Four, the ALJ found that plaintiff has no past relevant work. 20 C.F.R. § 416.965; Tr. 20.

At Step Five, however, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including packing line worker, marker II, and garment sorter. See 20 C.F.R. § 416.969; Tr. 21.

Accordingly, the ALJ found that plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff asserts the ALJ erred in three ways. First, plaintiff argues that the ALJ improperly rejected plaintiff's testimony. Second, plaintiff claims that the ALJ failed to incorporate all of plaintiff's limitations, as described in Dr. Prescott's opinion, into the RFC. Finally, plaintiff asserts that the ALJ failed to carry its burden of proof in finding that plaintiff retains the ability to perform other work in the national economy.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

## I.  Rejection of Plaintiff's Testimony

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. Id. at 1281.

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

In her Function Report, plaintiff stated that her combination of disabilities makes it difficult for her to leave the house without panicking. Tr. 137. Plaintiff claimed that she has poor attention span, can only pay attention for "maybe an hour if I'm lucky," and only gets three hours of restless sleep per night. Tr. 135, 139. Plaintiff testified that she does not drive because it "makes her nervous." Tr. 44, 137. Plaintiff reported that she struggles to follow spoken instructions, but does better with written instructions, and gets along well with authority figures. Tr. 139-40. In caring for her two children, plaintiff stated she does everything a mother or father would do for their children, including house cleaning, laundry, and preparing meals. Tr. 135-36.

At the hearing, plaintiff testified that she has a friend that helps her with shopping. With regard to her children, plaintiff

testified that she has attended a parent-teacher conference, a lunch event at her son's school, and some of her daughter's sporting events when she had somebody to go with her. Tr. 38-39. When asked how she fills her day, plaintiff testified that she "constantly find[s] something to clean," watches television, and crochets. Tr. 39-40.

The ALJ rejected plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms. Tr. 18. The ALJ did not make a finding of malingering. Therefore, the ALJ was required to identify clear and convincing reasons for discounting plaintiff's testimony. Smolen, 80 F.3d at 1281. I find the ALJ's reasons readily meet this standard and are supported by substantial evidence in the record.

The ALJ found plaintiff's symptom testimony inconsistent with her activities of daily living. The ALJ noted that, despite plaintiff's alleged disabilities, she reported that she did "everything a mom/dad would do for their kids." Tr. 18, 135. In addition, as the ALJ noted, plaintiff reported that she uses public transportation and shops in stores despite her disability. Tr. 18, 137. Finally, the ALJ noted several instances after the alleged onset of plaintiff's disability where plaintiff reported going out of town, including a fourteen day honeymoon in February of 2009; March, April, and July 2009 trips to care for her ill mother-in-law; and a four-to-six-week trip to Los Angeles as her "marriage

was falling apart" in October of 2009, to "help grandparents." Tr. 18-19, 293, 295, 299, 382, 385. Considering a significant portion of plaintiff's alleged disability is anxiety caused by leaving her home and being among the public, the ALJ reasonably could find that plaintiff's activities are inconsistent with her allegation that she is completely unable to work due to her symptoms.

In addition, the ALJ noted several inconsistencies in plaintiff's statements. The ALJ noted that in plaintiff's evaluation with Dr. Prescott, the psychologist designated to examine plaintiff with respect to her disability claim, plaintiff reported that she had never been married. Tr. 19, 332. The ALJ noted several instances where plaintiff indicated that she was married. Plaintiff does not dispute the accuracy of Dr. Prescott's note, but instead argues that there is no evidence in the record that she was ever married. Pl.'s Brief at 15; Pl.'s Reply at 6-7.

Plaintiff's argument misses the point. Plaintiff's actual marital status is not at issue - instead, the ALJ found plaintiff's reports to her health care providers inconsistent and discredited her on that basis. To be sure, the ALJ's findings in this respect are readily supported by substantial evidence in the record. On February 4, 2009, plaintiff reported to her therapist that she was to get married the next day and go on a two-week honeymoon. Tr. 299. Plaintiff also told her therapist three times that she was leaving town to take care of her sick mother-in-law. Tr. 293, 295,

385; Pl.'s Brief at 14; Pl.'s Reply at 5.   Plaintiff told Dr. Pardini on March 31, 2008 that she was married with two children. Tr. 220.  On May 29, 2009, plaintiff referred to her "spouse" in an appointment with her therapist.   Tr. 388.  On October 23, 2009, plaintiff told her therapist that her "'marriage was falling apart.'"  Tr. 382; Pl.'s Brief at 14.  Finally, on October 7, 2010, a little over a month before telling Dr. Prescott that she had never been married, plaintiff told her therapist that the car she thought was stolen was "found at 'my husband's friend's garage.'" Tr. 366.   Based on this evidence, the ALJ reasonably found plaintiff's statement to Dr. Prescott that she has never been married inconsistent with her other reports, and the ALJ appropriately discredited plaintiff's testimony on that basis. E.g., Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (an ALJ may use ordinary techniques of credibility evaluation such as inconsistent statements to discredit claimant).

Additionally, the ALJ found that plaintiff's statements regarding her driving were inconsistent. This finding is supported by substantial evidence in the record.  The ALJ noted that in her Function Report plaintiff reported that she did not drive because it makes her too nervous.  Tr. 19, 137.  Plaintiff repeated this assertion at the hearing, explaining that "being behind the wheel scares me to death."  Tr. 44.  Yet, as the ALJ pointed out,

plaintiff told Dr. Prescott that she drives when she has to, such as when she cannot get a ride or has to get to an appointment. Tr. 334. Plaintiff reported to Dr. Prescott that she owes fines for driving without a license, and has been jailed for driving with a suspended license. Tr. 333. The record reflects that plaintiff twice cancelled therapy appointments due to car trouble, Tr. 367, 391, reported being in a car accident, Tr. 298, and once locked her glucose logs in her car. Tr. 398. Moreover, as the ALJ noted, at the hearing plaintiff admitted she no longer has a driver's license. Tr. 44. The ALJ reasonably could find plaintiff's testimony that she is afraid to drive inconsistent with her report to Dr. Prescott. Burch, 400 F.3d at 680.

The ALJ also noted that plaintiff stated in her Function Report that she enjoyed reading, and testified at the hearing that she read "a lot." Tr. 40, 138. As the ALJ noted, plaintiff told Dr. Prescott, however, that she did "not read very much as she cannot concentrate." Tr. 334. The ALJ reasonably found these statements inconsistent.

Finally, the ALJ discredited plaintiff's testimony because she has no significant work history. Tr. 19. This finding is supported by substantial evidence in the record. As the ALJ noted, plaintiff has essentially never worked, reporting very brief employment as a retail associate and office assistant in 1999, and

some later part-time work as a child care provider.  Tr. 32-34,
142-49.  A claimant's lack of work history is a basis upon which an
ALJ may discredit the claimant's testimony that her disability
precludes work.  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir.
2002).  After a review of the record, I find the ALJ cited clear
and convincing reasons, supported by substantial evidence in the
record, to reject plaintiff's testimony.

## II.  Incorporation of Medical Testimony into RFC

Plaintiff argues that the ALJ failed to incorporate all of the
limitations included in Dr. Prescott's opinion into the RFC.  The
RFC must include all limitations supported by substantial evidence
in the record.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th
Cir. 2005).  Similarly, where the ALJ poses a hypothetical question
to a VE and relies on the subsequent testimony, the ALJ's
hypothetical must include all of the plaintiff's functional
limitations.  Flores v. Shalala, 49 F.3d 562, 570 (9th Cir. 1995).
Where the ALJ credits the opinion of a physician, the ALJ must
translate the plaintiff's condition as described in the physician's
opinion into functional limitations in the RFC.  See Stubbs-
Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).  "[A]n
ALJ's assessment of a claimant adequately captures restrictions
related to concentration, persistence, or pace where the assessment
is  consistent  with  restrictions  identified  in  the  medical

12 - OPINION

testimony." Id. (citing Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001); Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001)).

As relevant here, in her Medical Source Statement of Ability To Do Work-Related Activities (Mental), Dr. Prescott found that plaintiff had a marked limitation in her ability to interact appropriately with supervisors. Tr. 341. When asked what factors supported that assessment, Dr. Prescott wrote that plaintiff has an "unstable affect and labile mood with a tendency to lash out irritably. She has high anxiety and few coping resources." Additionally, Dr. Prescott found that plaintiff had a limitation with regard to her ability to keep "[s]ustained attention on a task - this client cannot focus well on work tasks. She is easily distracted." Tr. 341.

In this case, the ALJ gave Dr. Prescott's opinion "great weight." Tr. 19. Ultimately, the ALJ found that the RFC and available jobs identified by the VE fit within the limitations assessed by Dr. Prescott.

Additionally, Robert Henry, Ph.D., a non-examining reviewing physician, found that plaintiff was moderately limited in her ability to maintain concentration, persistence, and pace. Tr. 354. Dr. Henry also found plaintiff moderately limited in her ability to maintain attention and concentration for extended periods. Tr.

13 - OPINION

358. However, Dr. Henry found that plaintiff was *not* significantly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of length and rest periods. Tr. 359. As such, Dr. Henry noted that plaintiff is able to carry out simple, routine tasks on a consistent basis, and that "there is no indication that [plaintiff] would require special or constant supervision in order to remain on task." Tr. 360. The ALJ also gave Dr. Henry's opinion substantial weight, and adopted his findings in determining plaintiff's mental RFC. Tr. 20.

The ALJ translated the limitations described by Dr. Prescott and Dr. Henry into the following RFC: plaintiff "can understand and remember simple one- to three-step instructions, but may occasionally require repeated instructions. She can carry out simple routine tasks. The claimant should not have public contact in a work setting, but could interact appropriately with coworkers with whom she is familiar." Tr. 17. Additionally, in the vocational hypothetical posed to the VE, the ALJ included a marked limitation in interacting appropriately with a supervisor. Tr. 53. Based on this RFC and the ensuing hypothetical, the VE testified, and the ALJ found, that there are jobs that exist in the national economy that plaintiff can perform. Tr. 21, 51-55.

Plaintiff makes two arguments with respect to incorporating Dr. Prescott's opinion into the RFC. First, plaintiff complains that the RFC and resulting hypothetical was defective because her marked limitation in interacting with supervisors did not adequately capture all of the limitations described by Dr. Prescott. Pl.'s Brief at 11. Specifically, plaintiff argues that the ALJ erred in not including Dr. Prescott's handwritten note that plaintiff had an "unstable affect and labile mood" with a tendency to lash out irritably in the RFC and hypothetical. Id.

I disagree with plaintiff's first argument. In arriving at an RFC and posing a hypothetical to a VE, the ALJ must translate the limitations described by credited medical opinions into functional limitations. See Stubbs-Danielson, 539 F.3d at 1173-74. In this case, the ALJ did so by posing Dr. Prescott's conclusion as to plaintiff's ability to interact appropriately with supervisors to the VE in the hypothetical. The ALJ here properly included Dr. Prescott's conclusion about plaintiff's marked limitation with regard to interaction with supervisors in the vocational hypothetical; he did not need to additionally include every symptomatic term Dr. Prescott used in arriving at that conclusion. Stubbs-Danielson, 539 F.3d at 1174 (citing Howard, 255 F.3d at 582; Smith, 307 F.3d at 379). The ALJ's reliance on the VE's testimony, in this respect, was not error.

Second, plaintiff argues that the ALJ erred in failing to include Dr. Prescott's conclusion that plaintiff was limited in her ability to maintain "sustained attention on a task." Pl.'s Brief at 12; Tr. 341. On this point, I agree with plaintiff.

Here, Dr. Prescott found that plaintiff had difficulty maintaining sustained attention on work tasks. Yet, as noted above, Dr. Henry found that plaintiff was not significantly limited in her ability to work at a consistent pace, and she would not need constant supervision to stay on task. The ALJ, however, purported to credit the opinions of both Drs. Henry and Prescott without sufficiently resolving this conflict. Additionally, neither the RFC nor the vocational hypothetical contained the focus and concentration limitations described by Drs. Prescott and Henry.

This case is similar to Brink v. Comm'r Soc. Sec. Admin., 343 Fed. Appx. 211, 2009 WL 2512514 at *1 (9th Cir. 2009). There, the ALJ credited medical evidence that the plaintiff had moderate difficulty maintaining concentration, persistence, or pace. The ALJ's hypothetical, however, only limited plaintiff to "simple, repetitive work." Id. The Ninth Circuit rejected the Commissioner's argument that the "simple, repetitive work" limitation accommodated the plaintiff's concentration, persistence, and pace limitations, and remanded for the Commissioner to clarify the hypothetical to account for the plaintiff's concentration,

persistence, and pace limitations, and make a new disability finding. Id. at *1-*2.

Here, the "occasional repeated instructions" limitation similarly misses the substance of plaintiff's focus and concentration limitations. While the RFC and hypothetical did consider that plaintiff may occasionally require repeated instructions, the ALJ treated this limitation as relating to plaintiff's cognitive ability to understand instructions, rather than her sustained ability to focus on work tasks. Tr. 54. The question with regard to this limitation is not whether plaintiff can understand instructions, but whether she has the mental capacity to stay on task such that employment is available. Because the ALJ did not formulate the RFC in such a way as to resolve the conflict between the opinions of Drs. Prescott and Henry, or include any attendant focus limitations in the RFC and vocational hypothetical, the ALJ has erred.

## III. **Other Work in the National Economy**

When an ALJ finds that the claimant's impairments preclude him from performing past relevant work, the burden shifts to the Commissioner at Step Five to show that the claimant can perform other work that exists in significant numbers in the national economy. Lockwood v. Comm'r Social Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner can meet this burden by

having a vocational expert testify at the hearing based on a vocational hypothetical. Id. (quoting Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999)). A vocational hypothetical is sufficient if it includes all of the claimant's limitations that are supported by substantial evidence in the record. See Bayliss, 427 F.3d at 1217-18. An ALJ may exclude limitations unsupported by substantial evidence in the record. Id.

Because the RFC and resultant vocational hypothetical were in error, the Commissioner cannot rely on the VE testimony to carry his burden that plaintiff can perform other work available in the national economy. Because this necessitates a remand to the Commissioner, I decline to address plaintiff's other Step Five arguments.

## IV. Remand

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award

of benefits directed." Id. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id. Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

In this case, there are outstanding issues that must be resolved before a determination of disability can be made. Here, the ALJ erred in failing to include plaintiff's focus and concentration limitations in the RFC and vocational hypothetical, or to resolve the conflict as to the extent and nature of the plaintiff's alleged limitation. Specifically, it is unclear whether Dr. Prescott's finding that plaintiff "cannot focus well on work tasks" and is "easily distracted" is consistent with Dr. Henry's findings of moderate limitations with regard to the ability to maintain concentration, persistence, or pace, and yet is not significantly limited in her abilities to work at a consistent pace and work without constant supervision.

19 - OPINION

Accordingly, on remand the ALJ should determine whether the opinions of Drs. Henry and Prescott are consistent. If so, the ALJ should explain why the opinions are consistent, and translate them into a functional limitation to be incorporated into a new RFC and vocational hypothetical. If the ALJ finds the opinions are inconsistent with each other, he should credit one opinion over the other in this respect, and accordingly incorporate the credited opinion into a new RFC and vocational hypothetical. The ALJ must provide legally sufficient reasons for crediting one doctor's opinion over the other. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). In doing so, however, the ALJ may utilize all of the traditional tools of weighing medical opinions, including the nature of the doctor's relationship with the plaintiff, the opinions' internal consistency, the extent to which the opinions rely on plaintiff's discredited testimony, and the opinions' consistency with plaintiff's activities of daily living.

In short, because outstanding issues remain which must be resolved, and it is not clear from the record that Plaintiff is entitled to disability benefits, the Court reverses the ALJ's decision and remands for further administrative proceedings.

///

///

///

20 - OPINION

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _19_ day of November, 2012.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge

21 - OPINION